No. 23-10481-CC

In the
United States Court of Appeals
for the Eleventh Circuit

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

KIMBERLY CLARIDY WALKER,
*Defendant-Appellant*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 3:21-CR-48-TJC-PDB-1

---

## BRIEF OF THE UNITED STATES

---

ROGER B. HANDBERG
United States Attorney

HOLLY L. GERSHOW
Assistant United States Attorney
Deputy Chief, Appellate Division

YVETTE RHODES
Assistant United States Attorney
Appellate Division
Florida Bar No. 508527
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000

July 21, 2023

*United States v. Kimberly Claridy Walker*
No. 23-10481-CC

**Certificate of Interested Persons
and Corporate Disclosure Statement**

In addition to the persons identified in the Certificate of Interested

Persons and Corporate Disclosure Statement in Kimberly Claridy Walker's

principal brief, the following persons have an interest in the outcome of this

case:

1.  Gershow, Holly L., Assistant United States Attorney,
    Deputy Chief, Appellate Division;

2.  Handberg, Roger B., United States Attorney;

3.  Hoppmann, Karin, former Acting United States Attorney;

4.  Klindt, Hon. James R., United States Magistrate Judge;

5.  Proctor, Gray R., Esq.;

6.  Rhodes, David P., Assistant United States Attorney,
    Chief, Appellate Division;

7.  Rhodes, Yvette, Assistant United States Attorney;

8.  Toomey, Hon. Joel B., United States Magistrate Judge; and

9.  Walker, Kimberly Claridy, defendant-appellant.

No publicly traded company or corporation has an interest in the

outcome of this appeal.

## Statement Regarding Oral Argument

Like the appellant, Kimberly Michelle Claridy Walker, the United States does not request oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement ........ C-1

Statement Regarding Oral Argument .............................................................. i

Table of Contents .......................................................................................... ii

Table of Citations ........................................................................................ iv

Statement of Jurisdiction ........................................................................... viii

Statement of the Issue .................................................................................. 1

Statement of the Case and Course of Proceedings ......................................... 1

    *Statement of the Facts* ............................................................................. 2

        1.  Walker's Sophisticated Drug-Trafficking Conspiracy ............. 2

        2.  The Sentencing Proceedings ................................................... 4

            a.  The district court applies the USSG §2B1.1(b)(1)
               firearm enhancement but states that it would
               impose the same sentence regardless of the
               enhancement ............................................................. 4

            b.  The district court's considers the 18 U.S.C.
               § 3553(a) factors and imposes a sentence 180
               months' below Walker's guidelines range ..................... 6

    *Standards of Review* ............................................................................ 13

Summary of the Argument .......................................................................... 13

Argument and Citations of Authority ........................................................ 15

Walker is not entitled to relief on her claims that the district court imposed a procedurally and substantively unreasonable sentence when it varied downward 180 months below her advisory guidelines range—a range that is unaffected by the purported error in applying the USSG §2D1.1(b)(1) firearm-possession enhancement—and the court said that it would have imposed the same sentence regardless of that enhancement ................................... 15

A.    The district court's application of the USSG §2D1.1(b)(1) firearm-possession enhancement had no effect on Walker's 300-month sentence, and that sentence was reasonable .................................................. 16

B.    But even if this Court addresses Walker's guidelines-calculation argument, she is entitled to no relief on that basis ........................................................................ 24

(1)    *The evidence established that Neal, Walker's coconspirator, had possessed a gun in furtherance of their drug-trafficking activity and that his possession had been reasonably foreseeable to Walker* ....................... 25

(a)    *Neal possessed the gun in furtherance of the Walkers' drug-trafficking activity* ........................... 26

(b)    *Neal's firearm possession was reasonably foreseeable to Walker* ........................................... 29

(2)    *The evidence established alternatively that Walker constructively possessed the gun found in her bedroom* ....... 30

Conclusion ................................................................................. 33

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

iii

# Table of Citations

## Cases

*Dist. Of Columbia v. Heller*,
  554 U.S. 570 (2008) ................................................................28, 29

*Gall v. United States*,
  552 U.S. 38 (2007) ................................................................13, 19

*Lockhart v. United States*,
  577 U.S. 347 (2016) ............................................................... 16

*United States v. Alicea*,
  875 F.3d 606 (11th Cir. 2017) ............................................... 16

*United States v. Audain*,
  254 F.3d 1286 (11th Cir. 2001) ............................................. 25

*United States v. Baldwin*,
  774 F.3d 711 (11th Cir. 2014) ............................................... 21

*United States v. Burgos*,
  518 F. App'x 728 (11th Cir. 2013) ........................................ 22

*United States v. Carillo-Ayala*,
  713 F.3d 82 (11th Cir. 2013) ................................................25, 31

*United States v. Delgado*,
  981 F.3d 889 (11th Cir. 2020)........................................ 27, 29, 31

*United States v. Ellisor*,
  522 F.3d 1255 ...................................................................... 32

*United States v. Fields*,
  408 F.3d 1346 (11 Cir. 2005)................................................26, 29

*United States v. Gallo*,
  195 F.3d 1278 (11th Cir. 1999)............................................. 26

*United States v. Geffrard*,
  87 F.3d 448 (11th Cir. 1996) ................................................ 32

*United States v. Goldman,
 953 F.3d 1213 (11th Cir. 2020) ................................................................ 17

United States v. Gonzalez,
 550 F.3d 1319 (11th Cir. 2008) ............................................................... 22

United States v. Goodlow,
 389 F. App'x 961 (11th Cir. 2010) ......................................................... 29

United States v. Hall,
 46 F.3d 62 (11th Cir. 1995) ..................................................................... 31

United States v. Humphrey,
 164 F.3d 585 (11th Cir. 1999) ............................................................ 28, 29

United States v. Irey,
 612 F.3d 1160 (11th Cir. 2010) ............................................................... 13

United States v. Jayyousi,
 657 F.3d 1085 (11th Cir. 2011) ............................................................... 22

United States v. Johnson,
 No. 21-11637, 2023 WL 1876354 (11th Cir. Feb. 10, 2023) ...................... 30

*United States v. Keene,
 470 F.3d 1347 (11th Cir. 2006) .................................................... 17–19, 24

United States v. Litzky,
 18 F.4th 1296 (11th Cir. 2021) ................................................................ 21

United States v. Martin,
 455 F.3d 1227 (11th Cir. 2006) ........................................................... 22, 23

United States v. Martinez,
 924 F.2d 209 (11th Cir. 1991) ................................................................. 30

*United States v. Mathis,
 767 F.3d 1264 (11th Cir. 2014) ............................................................... 16

United States v. McBride,
 511 F.3d 1293 (11th Cir. 2007) ............................................................... 19

*United States v. McQueen*,
    727 F.3d 1144 (11th Cir. 2013) ................................................................ 19

*United States v. Pham*,
    463 F.3d 1239 (11th Cir. 2006) ................................................................ 29

*United States v. Saget*,
    991 F.2d 702 (11th Cir. 1993) .................................................................. 27

*United States v. Smith*,
    231 F.3d 800 (11th Cir. 2000) .................................................................. 13

*United States v. Stallings*,
    463 F.3d 1218 (11th Cir. 2006) ................................................................ 25

*United States v. Straub*,
    508 F.3d 1003 (11th Cir. 2007) .......................................................... 13, 28

*United States v. Timmons*,
    283 F.3d 1246 (11th Cir. 2002) ................................................................ 28

*\*United States v. Valnor*,
    451 F.3d 744 (11th Cir. 2006) .................................................................. 24

*\*United States v. Villarreal*,
    613 F.3d 1344 (11th Cir. 2010) .......................................................... 30, 32

*United States v. Woodard*,
    531 F.3d 1352 (11th Cir. 2008) ................................................................ 28

*Williams v. United States*,
    503 U.S. 193 (1992) ................................................................................ 13

## Statutes

18 U.S.C. § 924(c) .......................................................................................... 28

18 U.S.C. § 1956(a)(1)(B) ............................................................................... 22

18 U.S.C. § 3231 ........................................................................................... viii

18 U.S.C. § 3553(a) .................................................................................*passim*

18 U.S.C. § 3553(a)(6) ................................................................ 22

18 U.S.C. § 3742(a) ................................................................... viii

18 U.S.C. § 1956(h) ...................................................................... 2

18 U.S.C. § 1957 ........................................................................... 2

21 U.S.C. § 841(a)(1) ..................................................................... 2

21 U.S.C. § 841(b)(1)(C) ............................................................. 22

21 U.S.C. § 846 ............................................................................. 2

28 U.S.C. § 1291 ....................................................................... viii

## Rules

Fed. R. App. P. 4(b) ................................................................... viii

*Fed. R. Crim. P. 52(a) ............................................................... 13

## Other Authorities

*Synthetic Cathinones ("Bath Salts") Drug Facts.*
    https://nida.nih.gov/publications/drugfacts/synthetic-cathinones-
    bath-salts (last visited July 14, 2023) ........................................... 3

USSG, Ch. 5, pt. A (sentencing table) ........................................ 16

USSG §2B1.1(b)(1) ....................................................................... 4

USSG §2D1.1(b)(1) ................................................................*passim*

*USSG §2D1.1, comment. (n.11.(A)) ..................................... 25, 26

USSG §2D1.1(b)(15)(E) ................................................................ 6

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction, *see* 18 U.S.C. § 3231, and it entered the judgment against Kimberly Michelle Claridy Walker on February 8, 2023, Doc. 434. Walker timely filed a notice of appeal on February 13, 2003. Doc. 453; *see* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal, *see* 28 U.S.C. § 1291, and authority to examine Walker's challenge to her sentence, *see* 18 U.S.C. § 3742(a).

## Statement of the Issue

Whether Walker is entitled to relief on her claims that the district court imposed a procedurally and substantively unreasonable sentence when it varied downward 180 months below her advisory guidelines range—a range that is unaffected by the purported error in applying the USSG §2D1.1(b)(1) firearm-possession enhancement—and the court said that it would have imposed the same sentence regardless of that enhancement.

## Statement of the Case and Course of Proceedings

Kimberly Walker was convicted and imprisoned based on prior drug-dealing activity. Having continued in the family drug business after release for her last felony drug conviction, she pleaded guilty here to having conspired to both distribute drugs and launder the proceeds. Although Walker's guidelines range would have remained the same and the district court stated that it would have imposed the same 300-month sentence, which was a significant downward variance from her sentencing range and substantively reasonable, Walker still argues that the court's application of a USSG §2D1.1(b)(1) firearm-enhancement was not harmless and that her sentence is unreasonably long.

Walker pleaded guilty without a plea agreement to having conspired to

1

distribute and to possess with the intent to distribute Schedule I controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and with having conspired to launder money, in violation of 18 U.S.C. §§ 1956(h) and 1957. Docs. 275, 356; *see* Doc. 114.

Walker's total offense level of 43 and criminal history category of V would have resulted in a sentencing range of 360 months to life imprisonment. Doc. 478 at 44; *see* Doc. 426 (Presentence Investigation Report ("PSR")) ¶ 164.[1] Given the statutory-maximum penalty of 40 years' imprisonment, the district court established her sentencing range at 360 to 480 months and sentenced her to serve 300 months' imprisonment.[2] Doc. 478 at 44, 107–08.

### *Statement of the Facts*

### 1.    **Walker's Sophisticated Drug-Trafficking Conspiracy.**

In pleading guilty, Walker stipulated to these facts:

From July 2018 through April 2021, Walker and her husband Neal Walker led a drug-trafficking organization in Jacksonville, Florida.[3] Doc. 277

---

[1]Citations to the district-court filings and transcripts refer to the pagination header added upon filing with that court.

[2]Though not dispositive as to the issues presented, the actual guidelines range was 480 months' imprisonment. *See* Doc. 426 ¶ 162.

[3]Because Walker and her husband have the same last name, to avoid confusion, we refer to Kimberly Walker as "Walker" and Neal Walker as

at 5. The Walkers distributed illegal narcotics from residences, also called "trap houses." Doc. 277 at 5. Each trap house operated 24 hours a day, and at least one seller was present at all times. Doc. 277 at 5. When a seller finished his shift, he would give Walker an accounting of the drugs remaining at the house and of the money made from the drug sales. Doc. 277 at 5. Walker would then tell the seller what amount of the proceeds, ordinarily 25 percent, to take out for his pay. Doc. 277 at 5–6. When the seller told Walker that the drug supply was running low, she would arrange for someone to deliver more drugs and drug packaging to the trap house. Doc. 277 at 6.

On average, sellers on each shift sold about 44 grams of $\alpha$-Pyrrolidinopentiophenone, or alpha-PVP, a Schedule I controlled substance also called "flakka." Doc. 277 at 6. They also sold about 3.4 grams of 3,4-Methylenedioxymeth-methamphetamine or MDMA, a Schedule I controlled substance called "molly."[4] Doc. 277 at 6.

When agents searched the Walkers' home in April 2021, they found

---

"Neal."

[4]Synthetic cathinones, more commonly known as "bath salts," are human-made stimulants marketed as cheap substitutes for other stimulants such as amphetamines and cocaine. Products sold as "molly" often contain synthetic cathinones instead of MDMA. *Synthetic Cathinones ("Bath Salts") Drug Facts*. https://nida.nih.gov/publications/drugfacts/synthetic-cathinones-bath-salts (last visited July 14, 2023).

large quantities of alpha-PVP and MDMA (or similar drugs), drug-packaging materials, and digital scales. Doc. 277 at 6. They also seized over $148,000 in cash, a 2015 BMW, a 2015 Lexus, a 2013 Audi, a motorcycle, two magazines, assorted ammunition, two Rolex watches, various pieces of gold jewelry, and various designer accessories. Doc. 277 at 7–8. During the investigation, authorities also discovered various financial transactions showing that Walker and her coconspirators had laundered the drug proceeds. Doc. 277 at 8–10.

### 2.    The Sentencing Proceedings

#### a.    The district court applies the USSG §2B1.1(b)(1) firearm enhancement but states that it would impose the same sentence regardless of the enhancement.

The United States Probation Office recommended that the court establish Walker's total offense level at 43 and her criminal history category at V, which would have resulted in a sentencing range of 360 months to life in prison. Doc. 426 ¶¶ 85,4 112, 162. Because the statutory-maximum penalties for Walker's offenses (20 years for both the drug offense and money-laundering offenses) were less than the minimum of the applicable guidelines range, the recommended guideline term of imprisonment was 480 months. Doc. 426 ¶ 162. The offense-level calculation included a two-level USSG §2D1.1(b)(1) enhancement because authorities had found a gun, drugs, and drug-packaging material when they searched the Walkers' home. Doc. 426 ¶ 76(b).

Walker objected to the firearm enhancement. Doc. 424 at 3; Doc. 478 at 5–6. She asserted that she could not have reasonably foreseen that the gun would have been in her bedroom because, in her drug dealing, she had never used a gun. Doc. 478 at 6, 38.

To support the firearm enhancement, DEA Special Agent Chris Pekerol testified as follows:

The Walkers' home included a master suite with a bedroom and adjoining bathroom. Doc. 478 at 16. As agents searched the master bedroom, they found a .380 caliber pistol under the mattress. Doc. 478 at 13–14, 33. The bed was situated between two nightstands, and the agents saw a man's belongings atop one and a woman's belongings atop the other. Doc. 478 at 13–15. The gun was found closer to the nightstand with the man's belongings, so Agent Pekerol believed that gun had been on Neal's side of the bed. Doc. 478 at 13.

A table was a few feet away from the bed, in the space between the bedroom and the bathroom. Doc. 478 at 16. Loose drugs, packaged drugs, drug-packing materials, and a scale were on top of that table. Doc. 478 at 16. Agents also found drugs and money inside a dresser near the bed. Doc. 478 at 17. The money found throughout the home totaled about $146,000. Doc. 478 at 19. (Walker had last reported income of $23,000 in 2017. Doc. 478 at 20.)

5

Based on the evidence presented, the district court overruled Walker's objection to the section 2D1.1(b)(1) firearm enhancement. Doc. 478 at 39. The court found that evidence that the gun had been under the Walkers' mattress, where Walker had slept and that drugs had been nearby, established by a preponderance of the evidence that she had possessed the gun even if it didn't belong to her. Doc. 478 at 39–40. The court also stated that, even if it would have ruled differently in calculating Walker's guidelines range, its ultimate sentence would have been the same. Doc. 478 at 95–96. (The court also sustained Walker's objection to another two-level enhancement under USSG §2D1.1(b)(15)(E), based on her commission of the drug offense as part of a pattern of criminal conduct engaged in as a livelihood. Doc. 478 at 40; *see* Doc. 426 ¶ 76(d).)

### b.    The district court's considers the 18 U.S.C. § 3553(a) factors and imposes a sentence 180 months' below Walker's guidelines range.

The United States stated that the Walkers had orchestrated a large, organized drug conspiracy and had sold large quantities of drugs over an extended time and that Walker had a long history of drug trafficking. Doc. 478 at 48–50, 53–56 (recounting the PSR's recitation of Walker's criminal history, including 18 felony convictions in 12 cases over about 15 years).

The United States also asserted that Walker was more culpable than

6

Neal because she "appeared to be the one running the show." Doc. 478 at 47. The United States explained that wiretap evidence had shown that the drug workers had reported to Walker the drug counts at the beginning and end of each shift, that they had reported to her the amount of money they earned and when they needed her to resupply drugs at the trap house, that she had determined how much to pay the workers, generally about 25 percent of the sales, and that she had been scheduled to meet a drug supplier who had fled when he had spotted police surveillance. Doc. 478 at 48; *see* Doc. 426 ¶ 18.

So the United States urged that a sentence within Walker's guidelines range would be appropriate to reflect the seriousness of Walker's offenses, to promote respect for the law, to provide just punishment, and to afford specific and general deterrence, and to protect the public. Doc. 478 at 52, 58–59.

Walker's counsel argued that a downward variance to 240 months' imprisonment would be reasonable here. Doc. 478 at 77. Counsel noted that Walker had been raised in a single-parent home, where she had not only lacked sufficient parental guidance but also had been abused physically and that she had had no assistance to overcome the challenges of her upbringing. Doc. 478 at 70–71. Walker's mother had encouraged her to shoplift to provide for herself and her siblings. Doc. 478 at 71. After continuing her life of crime, Walker had given birth to some of her children while in custody, which had

7

led to depression. Doc. 478 at 71. She has continued to experience severe depressive episodes and has yet to receive the mental-health care that she needs. Doc. 478 at 71.

Counsel also asked the district court to consider that Walker's prior sentences had been "extreme" and "illegal" and that the prison sentence imposed would result in her youngest child growing up without her parents and the siblings who also would be sentenced for their participation in the drug-trafficking operation. Doc. 478 at 73–74. (The court responded that only the Walkers were responsible for their child's "difficult circumstances." Doc. 478 at 74–75.) Counsel also highlighted Walker's community involvement, including cofounding a gala for a local rescue mission, volunteering with a local chamber of commerce, serving as a board member of a local branch of the NAACP, helping to refurbish a local university, and hiring felons at her gas station. Doc. 478 at 75–76.

Finally, counsel noted that, although codefendant Marcus Peterson had been one of the Walkers' major suppliers, the district court had varied below his sentencing range of 121 to 151 months' imprisonment and imposed a 95-month sentence. Doc. 478 at 76. Given the "research and deliberations" of lawmakers in determining that 20-year maximum sentences were appropriate for each of Walker's convictions, counsel argued that a downward variance to

8

a 20-year sentence would be appropriate. Doc. 478 at 77.

Walker also called several witnesses who stated that she was a hardworking mother and that she had supported organizations that worked to deter gun violence and domestic violence and with prisoners transitioning back into society after incarceration. Doc. 478 at 62, 67–68. Walker's children also stated that they missed their parents and the emotional support that they had provided. Doc. 478 at 65–66, 70.

In allocution, Walker echoed that growing up in a home where domestic violence was the norm had caused lasting depression and anxiety. Doc. 478 at 78. She said that she had wanted to keep herself out of that environment and that she had begun to sell drugs to provide her family with a better life and the possibility of a better future. Doc. 478 at 78–79. She admitted, though, that she had failed to fully consider the negative, and perhaps irreparable, effects that her drug-dealing would have on her customers, their families, and her community. Doc. 478 at 79. She asked for the opportunity "to right" some of her wrongs and to find positive ways to give back to the people she had harmed. Doc. 478 at 79. And she highlighted the positive work that she had done, particularly by providing employment for ex-offenders, her realization that she had been addicted to the love of money and a middle-to-upper-class lifestyle, the support that she had found to continue on a path toward

redemption and rehabilitation, and her desire to reunite with her family, especially her nine-year-old daughter. Doc. 478 at 79–83.

As to the need for the sentence to avoid unwarranted sentencing disparities, the United States responded that Walker's sentence should not be compared to Peterson's. Doc. 478 at 90. The United States stressed that, though Peterson was a drug source, the Walkers had led the drug-trafficking organization. Doc. 478 at 91. The United States also explained that it had evidence to establish only that Peterson had supplied about 12 kilograms of drugs between November 2020 through April 2021. Doc. 478 at 90. On the other hand, the evidence established that Walker had distributed drugs for a much longer time, beginning in July 2018. Doc. 478 at 90.

Finally, the United States noted that Walker had been convicted of several drug offenses and thus had had ample chances "to stop … and do something else" and that, rather than renounce the mistakes of their own parents, the Walkers had involved their children in their drug dealing. Doc. 478 at 91–93.

The district court noted that, in its 20 years' federal experience, this case ranked high in terms of the operation's sophistication, organization, length, number of participants, productivity, and funds laundered, especially for drug activity in Jacksonville. Doc. 478 at 96–97, 99. The court also noted that the

Walkers had operated their drug dealing like a legitimate business with shifts during each 24-hour period, that the Walkers had had no plan of ceasing their activity—it would have continued if authorities hadn't stopped it, and that the Walkers had insulated themselves from the risks of their day-to-day operations by employing others to sell drugs away from their own home. Doc. 478 at 97–98. Although the court rejected the United States' position that Walker had been more culpable than Neal, it found that the other participants had had "less culpability, mostly by a long shot." Doc. 478 at 101; *see id.* at 107 (stating the Walkers' sentences would "justifiably stand apart from anybody else in this case").

As to Walker's history and characteristics, the district court accepted that she had had "a terrible upbringing" and that she would need mental-health services, substance-abuse services, and other resources while incarcerated. Doc. 478 at 101–02. The court determined, however, that her upbringing did not absolve her of her criminal responsibility. And though the court was not insensitive to the difficulties that Walker had had, the court also noted that she also had had "a long record of drug dealing"; that "this was not her first rodeo"; and that, after being released for prior drug convictions, she had jumped back into drug dealing "with both feet" and had run the show. Doc. 478 at 102. The court was particularly concerned that Walker had involved her

children in the drug dealing and considered it "a black mark" that she had used them to insulate herself from her activity. Doc. 478 at 103, 105. The court also stated that it had considered the sentencing guidelines and the kinds of sentences available and the need for Walker's sentence to reflect the seriousness of her offenses, promote respect for the law, provide just punishment, deter criminal conduct generally and specifically, protect the public from Walker's further crimes, and avoid unwarranted sentencing disparities. Doc. 478 at 103, 105–06. The court also determined that Peterson wasn't a good comparator to either of the Walkers. Doc. 478 at 107.

The district court determined that the 18 U.S.C. § 3553(a) factors compelled it to deviate below Walker's sentencing range and impose a 300-month prison sentence (consecutive sentences of 240 months for the drug-trafficking conspiracy conviction and 60 months for the money-laundering conspiracy). Doc. 478 at 107–08. The court determined that the sentence was sufficient but not greater than necessary, given the seriousness of this case as well as the extenuating circumstances. Doc. 478 at 96, 114–15. (The court also ordered Neal to serve 300 months' imprisonment for the same offenses. Doc. 478 at 117.) Walker did not object to the sentence or the manner in which the court had pronounced it. Doc. 478 at 114.

### Standards of Review

This Court reviews the district court's application of the sentencing guidelines de novo and its findings of fact for clear error. *United States v. Smith*, 231 F.3d 800, 806 (11th Cir. 2000). Even if this Court determines that the district court misapplied the sentencing guidelines, a remand is not warranted if it concludes, on the record as a whole, that the error was harmless, i.e., that the error did not affect the district court's selection of the sentence imposed. *See Williams v. United States*, 503 U.S. 193, 203 (1992); *see also* Fed. R. Crim. P. 52(a) (allowing a court to disregard "[a]ny error, defect, irregularity, or variance that does not affect substantial rights"). When a defendant fails to lodge specific sentencing objection in the district court, this Court may review her sentencing challenge only for plain error prejudicing her substantial rights. *United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007).

This Court reviews for abuse of discretion the substantive reasonableness of a sentence. *See Gall v. United States*, 552 U.S. 38, 51 (2007). That standard "allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc) (internal quotation marks and citation omitted).

### Summary of the Argument

This Court need not address Walker's challenge to the district court's

application of the USSG §2D1.1(b)(1) firearm-possession enhancement because any error in applying it would be harmless. As an initial matter, if the court had sustained Walker's objection to the enhancement, her guidelines range still would have been the same—480 months' imprisonment. So the firearm-possession enhancement did not affect the district court's selection of the sentence imposed. Moreover, at sentencing, the district court said that it would have imposed the same 300-month sentence even if it had resolved Walker's challenge to the enhancement in her favor. And Walker has failed to show that her sentence, which was significantly lower than her guidelines range and the statutory-maximum penalty, is substantively unreasonable given the 18 U.S.C. § 3553(a) factors as applied to the circumstances of this case. Thus, any error was harmless, and remand for resentencing is unwarranted.

In any event, Walker has failed to show that the district court clearly erred in finding that she had possessed—at least constructively—a gun during conduct associated with her drug-trafficking activities. Walker possessed the .380 caliber pistol that authorities found under the mattress in the master bedroom that she shared with her husband. In the same room, authorities also found other tools of their drug dealing, including drugs, drug paraphernalia, a scale, and a large sum of cash. That evidence contradicts Walker's assertion that she and Neal did not conduct their drug-trafficking operation in their

14

home. Thus, Walker has not established that it was clearly improbable that the gun was connected to her drug dealing. And, although she continues to assert that she had known nothing about the gun, the court chose to accept the evidence that contradicted her story. So her challenge to the firearm-possession enhancement fails on the merits, too.

For these reasons, Walker is entitled to no relief on her claims that her sentence is procedurally and substantively unreasonable.

## Arguments and Citations of Authority

**Walker is not entitled to relief on her claims that the district court imposed a procedurally and substantively unreasonable sentence when it varied downward 180 months below her advisory guidelines range—a range that is unaffected by the purported error in applying the USSG §2D1.1(b)(1) firearm-possession enhancement—and the court said that it would have imposed the same sentence regardless of that enhancement.**

Walker asks this Court to remand this case for resentencing, asserting that the district court erred by enhancing her offense level under USSG §2D1.1(b)(1) based on her possession of a pistol found in her home during her drug-trafficking activity and that the error was not harmless. Walker's brief at 10–19.[5] She also asserts that her 300-month sentence is greater than necessary

---

[5]Citations to Walker's brief refer to her pagination rather than the pagination header added upon filing with this Court.

and does not account for the 18 U.S.C. § 3553(a) factors. *Id.* at 21–25. She is entitled to no relief because the record refutes these assertions.

**A.    The district court's application of the USSG §2D1.1(b)(1) firearm-possession enhancement had no effect on Walker's 300-month sentence, and that sentence was reasonable.**

First, this Court need not decide if the district court erred in applying the USSG §2D1.1(b)(1) enhancement because that error is harmless. If the district court had not applied the section 2D1.1(b)(1) enhancement, Walker's total offense level would have been 41, which, combined with her criminal history category of V, also would have yielded the same sentencing range of 480 months imprisonment. *See* USSG, Ch. 5, pt. A (sentencing table) (establishing same guidelines range of 360 to life); *see also* Doc. 426 ¶ . Because the purported error did not affect Walker's guidelines range, it is harmless. *See United States v. Alicea*, 875 F.3d 606, 609 (11th Cir. 2017) (recognizing that error was harmless when defendant's guidelines range "would remain the same" without the error); *United States v. Mathis*, 767 F.3d 1264, 1284 (11th Cir. 2014) (concluding that any error in application of enhancement that increased the defendant's total offense level was harmless when the defendant's "guidelines range was the same with or without the enhancement"), *abrogated on other grounds by Lockhart v. United States*, 577 U.S. 347 (2016).

That's not the only reason the error is harmless, though. This Court will

16

also affirm a sentence based on harmless error in calculating a guidelines range if the district court said that it would have imposed the same sentence regardless of its ruling on a guidelines-calculation issue, and the sentence was reasonable even if the district court had decided that issue in the defendant's favor. *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). Thus, under *Keene*, this Court "need not review an issue when (1) the district court states it would have imposed the same sentence, even absent an alleged error, and (2) the sentence is substantively reasonable." *United States v. Goldman*, 953 F.3d 1213, 1221 (11th Cir. 2020).

The district court complied with the first *Keene* component, stating:

> We had some litigation earlier in the hearing this morning over the sentencing guidelines. And, of course, the Court has made the rulings that it thought was appropriate, and has arrived at guidelines that are 360 to 480 [months] for … Mrs. Walker.
>
> However, the Court, in imposing the sentence that it is going to …, wants the record to be clear that even if the Court had made different decisions regarding the advisory guidelines, or sustained additional objections to the guidelines that were made, the Court's ultimate sentence in this case that I'm going to impose would be the same.
>
> And … so the Court is imposing a sentence under [section] 3553(a) that it believes is sufficient, but not greater than necessary.
>
> And even if I had lowered the guidelines even further, as… Ms. Walker's attorney asked me to do so, the ultimate sentence I'm going to impose would be the same under 3553(a). And I say that just for purposes of [the] appellate record, because the Court

of Appeals likes to know whether or not that's the case.

Doc. 478 at 95–96.

Although Walker states that this was a spontaneous exclamation, Walker's brief at 19, she does not contest that it satisfied *Keene*. With good reason. The court's statement here almost mirrored the district court's explanation in *Keene*: "And I will say for the record that even if the guideline calculations are wrong, my application of the sentencing factors under Section 3553(a) would still compel the conclusion that a 10–year sentence [120 months] is reasonable and appropriate under all the factors that I considered." *See Keene*, 470 F.3d at 1349 (alterations this Court's). So the district court's explanation here satisfied *Keene* because it clearly stated that its resolution of Walker's guidelines-calculation issue "did not matter because it would have imposed the same sentence, using its [18 U.S.C. §] 3553(a) authority, even without the enhancement." *See id.*

Turning to the next step in the *Keene* analysis, even assuming the district court had erred in applying the section 2D1.1(b)(1) enhancement, Walker still has not shown that her 300-month sentence is unreasonable. As discussed above, even without that enhancement, Walker still would have faced a guidelines range of 480 months' imprisonment. And, as discussed below, Walker's 300-month sentence is substantively reasonable, and she has failed to

18

show that it isn't. *See Keene* at 1350 (holding that the defendant has the burden of establishing the unreasonableness of the sentence had the court decided the guidelines issue in her favor.)

This Court reviews for abuse of discretion the substantive reasonableness of the sentence, considering the totality of the circumstances, including an inquiry into whether the section 3553(a) factors support the sentence. *Gall v. United States*, 552 U.S. 38, 51 (2007). This Court defers to the district court's judgment regarding the weight given to the section 3553(a) factors unless the district court made "a clear error of judgment" and imposed "a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. McBride*, 511 F.3d 1293, 1297–98 (11th Cir. 2007) (internal quotation marks omitted). Because that rarely happens, "it is only the rare sentence that will be substantively unreasonable." *United States v. McQueen*, 727 F.3d 1144, 1156 (11th Cir. 2013). Walker's 300-month sentence is not that rare sentence.

The facts showed that Walker had had a tough upbringing, marked by abuse, parental neglect, untreated mental-health issues, and even childbirth while incarcerated. *See* Doc. 426 ¶¶ 126–131, 134–135, 140, 143; Doc. 424 at 5–7. But the facts also showed the following about Walker's criminal history and her participation in this drug-trafficking conspiracy: Walker had been

convicted before for having possessed cocaine with the intent to distribute it, having sold cocaine within 1,000 feet of a church or school, and having sold or delivered cocaine. Doc. 426 ¶¶ 97, 101, 103, 108, 109. While on probation after her release from prison in 2011, Walker's life of crime continued with a shoplifting conviction in 2013. *Id.* ¶¶ 109, 110; *see* Doc. 478 at 56 (prosecutor summarizing Walker's criminal history as comprising "15 years, 18 felony convictions in 12 cases"). Undeterred, Walker upped the ante by becoming the leader of a sophisticated, well-organized drug-trafficking and money-laundering operation. And she even employed her and Neal's children in their operation. *See* Doc. 426 ¶¶ 37–49 (discussing involvement of Walker's daughters); *see also* ¶ 57 (discussing involvement of another daughter, an unindicted coconspirator).

At sentencing, the district court established Walker's total offense level at 41, her criminal history at VI, and her sentencing range at 360 to 480 months' imprisonment. Doc. 478 at 44. (A sentencing range that, as discussed, is unaffected by the section 2D1.1(b)(1) enhancement.) Based on the court's assessment of these facts and Walker's history and characteristics, it denied Walker's request for a 240-month sentence. *See id.* at 77. But the court varied downward to a lesser extent, determining that a 300-month sentence was sufficient but not greater than necessary to comply with the statutory purposes

of sentencing, including the need for Walker's sentence to reflect the seriousness of her offense, promote respect for the law, provide just punishment, provide general and specific deterrence, and protect the public from her further crimes. *Id.* at 95–96, 101–07.

That was reasonable. *See, e.g.*, *United States v. Litzky*, 18 F.4th 1296, 1307 (11th Cir. 2021) (affirming sentence as substantively reasonable where "the district court thoroughly and thoughtfully explained why it believed a downward variance of 50 years—but no more—met the goals of sentencing"); *United States v. Baldwin*, 774 F.3d 711, 731 (11th Cir. 2014) (same, where in varying from defendant's guidelines range of 78 to 87 months' imprisonment and imposing a 60-month sentence, the district court had considered the seriousness of his identity-theft offense, the harm his offense had caused the community and the government, the PSR facts about his personal history, and letters from his family). Indeed, Walker's sentence is far below her sentencing range (and, correspondingly less than the sentence the United States requested, *see* Doc. 478 at 52), and her sentence for each offense falls well below the respective statutory maximums,[6] all of which indicates its reasonableness. *See*

---

[6] Walker's 300-month sentence consists of a 240-month sentence for her drug conviction and a consecutive 60-month sentence for her money-laundering conviction, *see* Doc. 478 at 107–08, so it falls well below the 20-year, statutory-maximum penalty for each offense, *see* Doc. 426 ¶ 163 (citing

*United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (holding that a sentence was reasonable in part because it was well below the statutory-maximum penalty); *United States v. Burgos*, 518 F. App'x 728, 729 (11th Cir. 2013) ("As we ordinarily expect a sentence falling within the applicable Guidelines range to be reasonable, a sentence below the range would certainly not appear unreasonably high.").

Walker has not shown otherwise. As to the need under 18 U.S.C. § 3553(a)(6) to avoid unwarranted sentencing disparities, Walker would receive relief only if she identified a comparator: (1) a specific defendant, (2) with a similar record much like hers, (3) who has been found guilty of similar criminal conduct. *See United States v. Jayyousi*, 657 F.3d 1085, 1117–18 (11th Cir. 2011); *see also United States v. Martin*, 455 F.3d 1227, 1241 (11th Cir. 2006) (refusing to compare sentences without "a valid comparator for § 3553(a)(6) purposes").

Walker's challenge to her sentence as unreasonably disparate falls short because she does not identify any valid comparator. As the district court correctly found, Peterson was not a good comparator to Walker and Neal and the other coconspirators were "substantially less culpable and substantially less involved" than the Walkers. *See* Doc. 478 at 107. And, although on appeal,

penalties in 18 U.S.C. § 1956(a)(1)(B) and 21 U.S.C. §§ 841(b)(1)(C)).

Walker asserts that her 300-month sentence is "grossly disproportionate" to "[t]he range of sentences, from probation for three defendants to 40, 50, 60, 660 [sic] 80 and 95 months for others," *see* Walker's brief at 24, she did not discuss anyone's criminal conduct or record to establish a valid comparator. Therefore, she has failed to show that the district court made a clear error in judgment by failing to consider the need to avoid an unwarranted sentencing disparity. *See Martin*, 455 F.3d at 1241.

Walker's assertion at pages 19–25 of her brief that her below-guidelines sentence was substantively unreasonable because the district court "gave short shrift" to her personal experiences and failed to account for the changes she had made while she was detained pending trial similarly fails. As discussed above, the court discussed Walker's background and her community involvement, and determined that a 300-month sentence was warranted. *See* Doc. 478 at 102 (district court stating, "I'm not insensitive to the difficulties … that she had. I will point out, however, that she does have … a long record of drug dealing" and "she's capable of being generous and she's capable of doing for others, she's capable of … doing the right things."). And even if the court focused largely on other sentencing factors, Walker's disagreement with the court's assessment of the section 3553(a) factors cannot support this Court's vacatur of her sentence as unreasonable given the district court's careful

23

consideration of the pertinent sentencing factors. *See United States v. Valnor*, 451 F.3d 744, 752 (11th Cir. 2006).

Because Walker has failed to show that the district court committed a clear error of judgment by imposing her 300-month sentence, any error in applying the section 2D1.1(b)(1) enhancement was harmless. Thus, this Court should affirm on that basis without addressing Walker's challenge to the district court's guidelines calculation. *See Keene*, 470 F.3d 1347 at 1350 ("[I]t would make no sense to set aside this reasonable sentence and send the case back to the district court since it has already told us that it would impose exactly the same sentence, a sentence we would be compelled to affirm."). And, for the same reasons, Walker's independent challenge to the substantive reasonableness of her sentence fails.

**B.    But even if this Court addresses Walker's guidelines-calculation argument, she is entitled to no relief on that basis.**

The Sentencing Guidelines provide for a two-level enhancement when, in connection with the drug offense charged, a defendant possesses a dangerous weapon, including a firearm. USSG §2D1.1(b)(1). To justify a firearms enhancement, the United States must either establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during

conduct associated with the offense of conviction. *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006). Once the United States meets its initial burden, the burden shifts to the defendant to demonstrate that the connection between the weapon and the charged offense was "clearly improbable." *United States v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001) (internal quotation marks omitted); *see also* USSG §2D1.1, comment. (n.11.(A)) ("The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."). "In effect, the government benefits from a rebuttable presumption that a firearm, if present— just present, not present in proximity to drugs—is connected with the offense." *United States v. Carillo-Ayala*, 713 F.3d 82, 90 (11th Cir. 2013) (internal quotation marks omitted).

**(1)   *The evidence established that Neal, Walker's coconspirator, had possessed a gun in furtherance of their drug-trafficking activity and that his possession had been reasonably foreseeable to Walker.***

To apply the firearms-possession enhancement to members of a conspiracy, the United States must prove by preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *United States v. Gallo*, 195 F.3d 1278,

25

1284 (11th Cir. 1999). Walker does not argue that, when the agents found the gun, she and Neal were not members of the drug-trafficking conspiracy. Rather, she asserts at page 20 of her brief that the United States failed to prove that Neal had possessed the gun in furtherance of the conspiracy and that his possession was reasonably foreseeable to her. Her arguments fail.

(a)    *Neal possessed the gun in furtherance of the Walkers' drug-trafficking activity.*

As to whether Neal had possessed the gun in furtherance of the drug-trafficking conspiracy, the United States showed that a gun was present in the Walkers' home, so Walker bore the burden of establishing that was clearly improbable that the weapon was connected with her drug-trafficking offense. *See* USSG §2D1.1(b)(1), comment. (n.11.(A)); *see also United States v. Fields*, 408 F.3d 1346, 1359 (11 Cir. 2005) (stating that guidelines commentary addressed "Fields's argument that the firearms were not possessed in furtherance of the conspiracy").

Walker has pointed to nothing even remotely suggesting that a connection between the gun found in her bedroom and the drug-trafficking conspiracy was clearly improbable. The evidence showed no such improbability. Rather, as discussed above, the agents found the gun close by a large sum of cash, drugs, and drug paraphernalia and Walker admitted that she had arranged for the delivery of drugs to the sellers at the trap house and that

she had collected proceeds from them. So it was highly probable that the gun was connected to the Walkers' drug trafficking. *United States v. Saget*, 991 F.2d 702, 714 (11th Cir. 1993) (holding elements for 2D1.1(b)(1) enhancement based on a coconspirator's possession were satisfied where four weapons had been seized from the coconspirator's house, the coconspirator had been charged and convicted as a conspirator, and three of those weapons had been concealed in a room with 3.7 grams of crack cocaine); *see id.* (recognizing that guns are "tools of illegal narcotics trafficking") (internal quotation marks and citation omitted).

Moreover, the Walkers' illicit business activity necessarily involved dealing with people who supplied and purchased illegal drugs. It thus was not clearly improbable that either or both of the Walkers would have felt compelled to protect the drugs they distributed, the proceeds found in their home, and themselves while engaging in such high-risk activity. *See United States v. Delgado*, 981 F.3d 889, 903 (11th Cir. 2020) (approving section 2D1.1(b)(1) enhancement where the district court had found that a defendant could have used firearms and silencers discovered in his home to protect himself if needed).

Walker asserts for the first time that the evidence here—that the gun was found in her home "where the need for defense of self, family, and property is

27

most acute"—"ought not be sufficient to show that [the] firearm was possessed "in furtherance of the conspiracy." Walker's brief at 13–15. She relies on this Court's decisions in *United States v. Timmons*, 283 F.3d 1246, 1247 (11th Cir. 2002), and *United States v. Woodard*, 531 F.3d 1352, 1362 (11th Cir. 2008), which addressed the sufficiency of evidence admitted to establish that a defendant had possessed a firearm in furtherance of a drug-trafficking crime under 18 U.S.C. § 924(c), and the Supreme Court's decision in *Dist. Of Columbia v. Heller*, 554 U.S. 570, 573 (2008), which addressed the right to bear arms under the Second Amendment. Because she failed to challenge her sentence on this basis in the district court, *see generally* Doc. 478, this Court may review her argument only for plain error prejudicing her substantial rights. *See United States v. Straub*, 508 F.3d 1003, 1011 (11th Cir. 2007) (applying plain-error review where the particular ground on which appellant sought relief was different from what he had argued in the district court).

For a plain error to have occurred, the error must be one that is obvious and is clear under current law. *United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir. 1999). But Walker has cited no authority to support her argument that the assertion of a right to defend her home or her property was incongruent with the district court's finding that she had furthered her drug-trafficking activity by keeping a gun in her home alongside other tools of her

trade. *See* Walker's brief at 13–15. And no such authority exists. To the contrary, this Court has approved enhancements under section 2D1.1(b)(1) where a gun possibly could have been used for a drug trafficker's self-defense. *See Delgado*, 981 F.3d at 903; *see also United States v. Goodlow*, 389 F. App'x 961, 969 (11th Cir. 2010) ("There is no support in *Heller* for the invalidation of the [section 2D1.1(b)(1)] firearm enhancement on the basis of the Second Amendment.").

(b)     *Neal's firearm possession was reasonably foreseeable to Walker.*

As to the foreseeability of a coconspirator's possession, it is reasonably foreseeable for a coconspirator to possess a firearm in a lucrative illegal drug conspiracy. *See United States v. Pham*, 463 F.3d 1239, 1246 (11th Cir. 2006). Walker and Neal are married, and they have children together, some who worked in their drug-trafficking operation. *See* Doc. 426 ¶¶ 37–38, 43–44, 57, 132, 133. Their close familiarity also weighs in favor of Walker foreseeing Neal's actions. *See Field*s, 408 F.3d at 1359 (noting that, because the defendant and a coconspirator were cousins and had grown up together, their close relationship increased the possibility that the defendant would have been able to foresee the coconspirator's actions, including his gun possession); *United States v. Johnson*, No. 21-11637, 2023 WL 1876354, at *5 (11th Cir. Feb. 10, 2023) (unpublished) (approving finding that codefendant's firearm possession

29

was reasonably foreseeable to the defendant where they had been in a relationship for several years, lived together, and had a child together); *see also United States v. Martinez*, 924 F.2d 209, 210 (11th Cir. 1991) (protestations that defendants were unaware of coconspirator's firearm possession did not undermine the district court's finding that possession of the firearm was reasonably foreseeable).

**(2)    *The evidence established alternatively that Walker constructively possessed the gun found in her bedroom.***

Evidence of a defendant's constructive possession of a firearm can support a section 2D1.1(b)(1) enhancement. *See United States v. Villarreal*, 613 F.3d 1344, 1359 (11th Cir. 2010). A defendant constructively possesses firearm when she has "ownership, dominion, or control over an object itself or control over the premises in which the object is concealed." *Id.* (internal quotation marks omitted). Under that standard, Walker constructively possessed the gun.

During the search of the Walkers' home, agents found a .380 caliber pistol under the mattress in the room where Walker and Neal slept. Doc. 478 at 13. They also found drugs, drug paraphernalia, a scale, and money on a table close by the gun, and they found a large sum of money in other areas of the home. *Id.* at 15–16, 19. So the evidence refutes Walker's assertion at page 13 of her brief that the Walkers' "actual drug dealing took place" only in the

30

trap houses, not in their home.

Furthermore, proximity between guns and drug-related items is enough to meet the United States' initial burden under section 2D1.1(b)(1). *See Carillo-Ayala*, 713 F.3d at 92; *see also Delgado*, 981 F.3d at 902–03 (upholding section 2D1.1(b)(1) firearm enhancement where a gun was found with scales and powders and illicit drugs in the defendant's home, the intended destination for drugs); *United States v. Hall*, 46 F.3d 62, 63–64 (11th Cir. 1995) (same, where a gun was found in a dresser drawer in the same room as several drug-related objects, including scales, a bag containing cocaine residue, and a large amount of cash). Therefore, the district court did not clearly err in finding, by a preponderance of the evidence, that the gun was present at the site of the charged conduct, and Walker does not argue the contrary.

Walker argues, however, that she did not possess, or even know about, the gun that was stored inches from where she slept and that was close by drugs, drug paraphernalia, and a large sum of money. *See* Walker's brief at 10. But the district court was not required to credit her purported lack of knowledge. And, in any event, the court could have found Walker's constructive possession based on her control of the home where it was found. *See Villarreal*, 613 F.3d at 1459.

For these reasons, the district court did not clearly err in finding that

Walker had possessed the gun under section 2D1.1(b)(1). To the extent that Walker argues that the court failed to state that the Walkers' firearm possession had been in furtherance of their drug trafficking, *see* Walker's brief at 12, she is entitled to no relief. In overruling her objection to the enhancement, the court rejected her argument that she had not foreseen that Neal would possess a gun. Doc. 478 at 6, 38–39. If Walker had wanted a more specific finding, she could have asked for one. So her complaint in this regard comes "too late." *See United States v. Geffrard*, 87 F.3d 448, 453 (11th Cir. 1996) (where defendant failed to ask district court for particular findings of specificity of perjury, it was "too late" to complain in this Court). In any event, the court's findings that the section 2D1.1(b)(1) enhancement applied here should not leave this Court with the "definite and firm conviction" that the district court made a mistake. *See United States v. Ellisor*, 522 F.3d 1255, 1273 n. 25 (11th Cir. 2008).

## Conclusion

The United States requests that this Court affirm the judgment and sentence of the district court.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

HOLLY L. GERSHOW
Assistant United States Attorney
Deputy Chief, Appellate Division

By:    s/ Yvette Rhodes
YVETTE RHODES
Assistant United States Attorney
Appellate Division
Florida Bar No. 508527
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000
yvette.rhodes@usdoj.gov

## Certificate of Compliance with Type-Volume Limitation

This brief, which contains 7,416 countable words under 11th Cir. R. 32-4, complies with Fed. R. App. P. 32(a)(7)(B).

# Certificate of Service

I certify that a copy of this brief and the notice of electronic filing

was sent by CM/ECF on July 21, 2023, to:

GRAY R. PROCTOR, ESQ.
*Counsel for Kimberly Claridy Walker*

*s/ Yvette Rhodes*
YVETTE RHODES
Assistant United States Attorney

gkpr no / 07-17-23

*b_Walker, Kimberly US response brief FINAL.docx*